[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14722
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-00410-ACC-DCI


WAYNE TORPY,

Plaintiff - Appellant
Cross Appellee,

versus

UNUM LIFE INSURANCE COMPANY OF AMERICA,

Defendant - Appellee
Cross Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 10, 2018)

Before MARCUS, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

The district court granted Wayne Torpy's motion for partial summary judgment, finding he was entitled to benefits under a long-term disability policy issued by Unum Life Insurance Company. Torpy now appeals the district court's finding that he abandoned his claims for bad faith, and also appeals the denial of his motion for attorney's fees. Unum cross appeals, arguing the district court erred in calculating Torpy's benefits.

I.

Until his retirement in 2003, Torpy was a police officer for the City of Melbourne, Florida. Upon retirement, Torpy began receiving a pension from the City of Melbourne. In 2005, Torpy accepted a new job as Police Chief of Los Alamos County, New Mexico. As an employee of Los Alamos County, Torpy was covered by a long-term disability policy.

On November 27, 2012, Torpy had a stroke. On December 19, Torpy had surgery to address a brain aneurysm resulting from that stroke. Torpy returned to work on January 7, 2013. But on February 15, Torpy again had to take time off from work, this time to have heart surgery. He returned to work full-time on March 25. In June, Torpy stopped working on recommendation from his doctor when he began experiencing high blood pressure that could not be controlled by medication.

2

While Torpy took time off from work after his stroke, and again after his heart surgery, he continued receiving his full salary up until his last day of work, June 25, 2013. Once Torpy stopped working, he filed a claim for disability benefits. Through January 1, 2013, Los Alamos County offered disability insurance through Union Security Insurance Company. Starting in 2013, Los Alamos County switched insurance providers to Unum. At the direction of Los Alamos County staff, Torpy filed disability claims with both Union Security and Unum.

On July 3, 2013, Union Security sent Torpy a letter approving his claim. Union Security determined Torpy's disability onset date to be November 27, 2012, which was the day he had a stroke. On July 19, 2013, Unum sent Torpy a letter also approving his claim. Unum said Torpy's "date of disability has been determined to be February 18, 2013," the last day Torpy worked before his heart surgery.

On July 25, 2013, Unum sent another letter withdrawing approval of Torpy's claim. After speaking with Union Security, Unum decided Torpy's disability actually began in November 2012, when he had a stroke. As a result, Unum determined that Torpy became disabled before Unum's coverage became effective, and his claim should instead be paid by Union Security.

3

Union Security began paying Torpy's disability benefits.  But Union Security maintains that under the terms of its policy, it is entitled to reduce the amount of disability benefits owed by the amount Torpy is receiving from his City of Melbourne pension as well as his separate benefit from the New Mexico Public Employee Retirement Association.  This meant that while Torpy's disability benefits would have been around $7,000 per month without offsets, Union Security said he was entitled to only $100 per month.  This was the policy minimum.  In contrast, Unum's policy would not offset Torpy's City of Melbourne pension, but would, like Union Security, offset his New Mexico Public Employee Retirement benefits.  Torpy's benefits under the terms of Unum's policy would give him close to $4,000 per month.

In February 2016, Torpy filed suit against Unum in Florida state court. Torpy brought claims for: (1) a declaratory judgment that he is entitled to coverage under Unum's disability policy; (2) breach of contract; (3) common law bad faith; and (4) statutory bad faith, under 18 N.M. Stat. Ann. § 59A-16-20.  Torpy sought compensatory damages, punitive damages, and attorney's fees and costs.  Unum removed Torpy's suit to federal court.  Torpy moved for partial summary judgment, asking the court to find that he was covered under Unum's plan and that Unum was not entitled to offset the benefits Torpy was receiving under his City of Melbourne pension plan.  Unum filed its own motion for partial summary

4

judgment, arguing that even if Torpy were covered, his benefits were limited to the amount payable by Union Security, $100 per month, because Torpy had a pre-existing condition under the terms of Unum's policy.

After their respective motions for partial summary judgment were filed, Torpy and Unum filed a joint pretrial statement, pursuant to Local Rule 3.06. The filing listed the parties' cross motions for partial summary judgment and stated: "The parties both believe the Court can resolve the entire case by ruling on the Motions." The parties also provided proposed jury instructions for Torpy's breach of contract claim. There is no discussion in the joint pretrial statement or in the proposed jury instructions of Torpy's claims for common law bad faith or statutory bad faith.

The district court granted Torpy's motion for partial summary judgment. The court found Torpy was entitled to coverage under the terms of Unum's policy. With offsets, the court calculated Torpy's benefits to be $3,769 per month. In addition, the court noted that Torpy "appear[ed] to have abandoned the bad faith claims asserted in his Complaint because there is no mention of these claims in the Joint Final Pretrial Statement." And under Local Rule 3.06, the district court said "all pleadings are deemed to merge into the Joint Final Pretrial Statement, which will control the course of the trial." The court directed the clerk to remove the case from the docket, while reserving jurisdiction "to decide the amount of attorney's

5

fees to be awarded pursuant to Federal Rule of Civil Procedure 54(d), if the parties cannot stipulate to the amount." After a number of motions on the issues of attorney's fees and costs, the court awarded Torpy $429 in costs and no attorney's fees. The court also found that Unum owed Torpy $177,403.06 in damages, plus prejudgment interest, but that Unum had an equitable lien over any duplicative disability payments paid by Union Security to Torpy.

Torpy appealed, and Unum cross appealed.

## II.

The parties raise a number of issues on appeal. Torpy argues that the district court erred in (1) finding he abandoned his bad faith claims by omitting them from the joint pretrial statement; (2) granting Unum an equitable lien on the judgment; and (3) rejecting his motion for attorney's fees. Unum argues the district court incorrectly interpreted Unum's Continuity of Coverage provision to calculate the benefits owed to Torpy.

## A.

We turn first to Torpy's argument that the district court erred in finding his bad faith claims had been abandoned. "We review the trial court's interpretation of a pretrial order for abuse of discretion." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1461 (11th Cir. 1998). We also "give great deference to a district court's

6

interpretation of its local rules."  Edward Tobinick, MD v. Novella, 884 F.3d 1110,

1120 (11th Cir. 2018) (quotation omitted and alteration adopted).

Rule 3.06(e) of the U.S. District Court for the Middle District of Florida

states:

> All pleadings filed by any party prior to filing of the pretrial statement shall be deemed to be merged therein, or in any subsequent pretrial order entered by the court.  The pretrial statement and the pretrial order, if any, will control the course of the trial and may not be amended except by order of the Court in the furtherance of justice.

Local Rule 3.06(e).  These requirements were also included in the district court's

Case Management and Scheduling Order.

The district court found Torpy had abandoned his bad faith claims because

they were omitted from the joint pretrial statement.  In addition to not discussing

the bad faith claims or including the relevant jury instructions, the joint pretrial

statement affirmatively represented that "[t]he parties both believe the Court can

resolve the entire case by ruling on the Motions."  The district court did not abuse

its discretion in relying on the local rules and the joint pretrial statement to find

Torpy's bad faith claims had been abandoned.  Torpy could have asked for leave to

amend the joint pretrial statement, or asked the district court to reconsider its

decision that he had abandoned his bad faith claims, but he did not.  We affirm the

district court's decision in this regard.[1]

B.

We turn next to Unum's argument that the district court erred in interpreting

its policy.  We review de novo a district court's grant of summary judgment.

Edward Lewis Tobinick, MD v. Novella, 848 F.3d 935, 943 (11th Cir. 2017).

Summary judgment is only appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  In reviewing a motion for summary

judgment, we draw all inferences in favor of the nonmoving party.  Porter v. Ray,

461 F.3d 1315, 1320 (11th Cir. 2006).

The parties agree that New Mexico law governs this case.  Under New

Mexico law, "the interpretation of terms within an insurance policy is a matter of

law about which the court has the final word."  United Nuclear Corp. v. Allstate

Ins. Co., 285 P.3d 644, 647 (N.M. 2012) (quotation omitted).  "As with other

contracts, where an insurance policy's terms have a common and ordinary

meaning, that meaning controls in determining the intent of the parties."  Id.

---

[1] Although we affirm the district court's decision to view Torpy's bad faith claims as abandoned, because we remand on other grounds, Torpy may seek to amend the pretrial statement in accordance with the local rules.  See Local Rule 3.06(e) (allowing amendment of the pretrial statement only "by order of the Court in the furtherance of justice"); see also United States v. Varner, 13 F.3d 1503, 1507–08 (11th Cir. 1994) ("There is a presumption that a pretrial order will be amended in the interest of justice and sound judicial administration provided there is no substantial injury or prejudice to the opposing party or inconvenience to the court.").

(quotation omitted).  However, such terms "cannot be analyzed in a vacuum, and a policy must be construed in its entirety, with each clause interpreted in relation to others contained therein."  Id. at 649 (quotation omitted).  "But where a policy term is reasonably and fairly susceptible of different constructions, it is deemed ambiguous and must be construed against the insurance company as the drafter of the policy."  Id. at 648 (quotation omitted).

On appeal, Unum concedes that Torpy is eligible for coverage under its plan. But Unum contests how Torpy's benefits should be calculated.  Unum's argument on this point centers on the interpretation of the Continuity of Coverage provision in its policy.  As mentioned above, Los Alamos County began offering disability insurance coverage through Unum in January 2013—after Torpy suffered a stroke but before he qualified as "disabled" under the terms of Unum's plan.  Unum says Torpy's stroke qualifies as a pre-existing condition, and as a result, it is only liable for the benefits owed under the terms of the Union Security policy.  Torpy says he did not have a pre-existing condition, and regardless, Unum should be required to pay out benefits under the terms of its policy, not those in the Union Security policy.

We turn first to the language of the policy.  Unum's long-term disability policy says it "provides financial protection for you by paying a portion of your income while you are disabled."  If a policyholder becomes disabled, the policy

provides a monthly benefit of 60% of monthly earnings.  However, the policy also notes any payment "may be reduced by deductible sources of income and disability earnings" and "[s]ome disabilities may not be covered or may have limited coverage under this plan."

Unum's plan says that a policyholder is "disabled" when:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

But Unum's policy "does not cover any disabilities caused by, contributed to by, or resulting from" a pre-existing condition.  A policyholder has a pre-existing condition if:

- you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; and
- the disability begins in the first 12 months after your effective date of coverage.

In other words, if a policyholder becomes disabled in the first twelve months of coverage, and that disability is "caused by, contributed to by, or resulting from" a condition for which he received medical treatment in the three months before starting coverage, that disability is not covered by the policy.

However, because Unum was taking over coverage from a previous provider, Union Security, we must also examine the Continuity of Coverage

10

provision.  This provision has the effect of providing coverage to some policyholders who might otherwise be barred by Unum's pre-existing condition provision.  This provision reads:

> WHAT IF YOU HAVE A DISABILITY DUE TO A PRE-EXISTING CONDITION WHEN YOUR EMPLOYER CHANGES INSURANCE CARRIERS TO UNUM? (Continuity of Coverage)
>
> Unum may send a payment if your disability results from a pre-existing condition if, you were:
>
> - in active employment and insured under the plan on its effective date; and
> - insured by the prior policy at the time of change.
>
> In order to receive a payment you must satisfy the pre-existing condition provision under:
>
> 1. the Unum plan; or
> 2. the prior carrier's plan, if benefits would have been paid had that policy remained in force.
>
> If you do not satisfy Item 1 or 2 above, Unum will not make any payments.
>
> If you satisfy Item 1, we will determine your payments according to the Unum plan provisions.
>
> If you only satisfy Item 2, we will administer your claim according to the Unum plan provisions.  However, your payment will be the lesser of:
>
> a. the monthly benefit that would have been payable under the terms of the prior plan if it had remained [in force]; or
> b. the monthly payment under the Unum plan.

The district court made no finding on whether Torpy had a pre-existing condition.  Instead, the court said "it makes no difference to the benefits

11

determination" whether Torpy had a pre-existing condition because he would have been covered under the Unum policy in either case. It reached this conclusion by conflating Unum's concession that Torpy was covered under its policy with a concession that Torpy's benefits should be calculated under the terms of its policy. This was error.

The inartful drafting of the Continuity of Coverage provision has contributed to this dispute. The district court read the requirement that Torpy "must satisfy the pre-existing condition provision" under the Unum plan to mean that he must have a pre-existing condition as defined by the Unum plan. We reject this reading. Equating "satisfy the pre-existing condition provision" with "has a pre-existing condition" would mean that a policyholder who had a pre-existing condition according to the terms of Unum's policy and a pre-existing condition according to the terms of his previous carrier's policy would still qualify for coverage according to the terms of Unum's policy. This would be true even though the policyholder would have qualified for no coverage under his previous carrier's policy. Also, under this interpretation, the phrase "[i]f you do not satisfy Item 1 or 2 above, Unum will not make any payments" would mean that if a policyholder did not have a pre-existing condition as defined by either carrier's policies, Unum would not be liable for coverage. It is not reasonable to read the Unum policy in this way.

12

It is far more reasonable to read the phrase "satisfy the pre-existing condition provision" to mean that a policyholder is not barred from coverage by the relevant pre-existing condition provision.  Under this reading, Unum would not have to pay benefits to a policyholder whose disability also would have been exempted from coverage as a pre-existing condition under the terms of his previous provider's policy.  And Unum would be liable to cover disabilities that would otherwise be excluded from coverage as pre-existing conditions under its own policy, but that would have been covered had a previous policy remained in effect.

Turning to Torpy's case, if Torpy had a pre-existing condition according to the terms of Unum's plan, his disability would normally not be covered.  But the Continuity of Coverage provision says that Unum may nonetheless cover Torpy's disability so long as it did not also qualify as a pre-existing condition under Torpy's previous Union Security plan.  Unum concedes Torpy's disability would not have qualified as a pre-existing condition under Union Security's plan.  If Torpy had a pre-existing condition under Unum's policy, then, he is entitled to the lesser of the benefits payable under Unum's policy or Union Security's policy.  If Torpy did not have a pre-existing condition under Unum's policy, then he is entitled to the benefits payable under Unum's policy.  As a result, Torpy's benefits

13

calculation will be different depending on whether he had a pre-existing condition under Unum's policy.  The district court was mistaken to hold otherwise.

Because the district erred in analyzing the Continuity of Coverage provision, we vacate the district court's order and remand for further proceedings.[2]  On remand, the district court should consider in the first instance whether a dispute of material fact remains on the question of whether Torpy had a pre-existing condition as defined by Unum's policy.  If Torpy had a pre-existing condition under the terms of Unum's policy, then the amount owed by Unum will be the lesser of "the monthly payment under the Unum plan" or "the monthly benefit that would have been payable under the terms of the prior plan if it had remained in force."[3]

Because we vacate the judgment, we do not reach Torpy's argument that the district court erred in not awarding him attorney's fees under New Mexico law or in granting Unum an equitable lien.

### AFFIRMED IN PART, VACATED AND REMANDED IN PART.

---

[2] Unum does not challenge the district court's ruling that Torpy is entitled to coverage under its policy, or that benefits calculated under the terms of Unum's policy would not be offset by Torpy's retirement pension.  We therefore affirm the district court's order in those respects.

[3] The joint pretrial statement said it was an undisputed issue of fact that "[d]ue to offsets, the amount of disability benefits payable to Torpy under the Union Security policy is $100 per month."  But even so, the district court "ma[de] no factual finding on whether such an offset is appropriate or a correct interpretation of the Union Security policy."  Should the district court determine that Torpy's disability was a result of a pre-existing condition, we leave it to the district court to determine the monthly benefit payable under the Union Security policy.

14